```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 Cr. 643 (PKC)

5    GARY HIRST,

6                   Defendant.

7    ------------------------------x
                                          September 23, 2016
8                                         3:30 p.m.

9    Before:
                        HON. P. KEVIN CASTEL
10
                                          District Judge
11

12
                            APPEARANCES
13
     PREET BHARARA
14        United States Attorney for the
          Southern District of New York
15   BY:  BRIAN R. BLAIS
          AIMEE HECTOR
16        REBECCA G. MERMELSTEIN
          Assistant United States Attorneys
17
     SHER TREMONTE LLP
18        Attorneys for Defendant
     BY:  MICHAEL TREMONTE
19        JUSTINE A. HARRIS
          NOAM KORATI BIALE
20

21   ALSO PRESENT:
          ELLIE SHEINWALD, Paralegal
22

23

24

25
```

1    (Trial resumed; jury not present)

2        THE COURT:  I missed you all.  Good to see you.

3        This is the charging conference in the United States

4    against Gary Hirst.  All counsel and the defendant are present.

5        You should have draft number 3, and that's what I'm

6    going to work off of.  Let me ask -- I'll turn to the

7    government first, and then I'll turn to the defense -- any

8    changes up to page 19?

9        MR. BLAIS:  No, your Honor.

10       MS. HARRIS:  Your Honor, as reflected in our letter,

11   we had asked that the phrase "the testimony of an" --

12       THE COURT:  No, page.

13       MS. HARRIS:  Page 11.  I apologize.

14       THE COURT:  Thank you.  Go ahead.  Now continue.

15       MS. HARRIS:  Do you mind if I sit, your Honor?

16       THE COURT:  No, sit.  It's a better idea.  Thank you.

17       MS. HARRIS:  Thank you.

18       "The testimony of an accomplice may be enough in

19   itself for conviction if the jury believes the testimony

20   establishes guilt beyond a reasonable doubt."

21       Typically, obviously, that's a true state of the law,

22   but on the facts of this case, the two accomplice witnesses

23   really testified to collateral issues.  They had incriminatory

24   information, obviously, that related to the case, but I don't

25   think, as matter of law, that either of their testimonies would

1   be sufficient to convict, and I think it would be misleading to

2   instruct the jury to that effect here.

3           THE COURT:  Let me try this.  "The testimony of an

4   accomplice may alone be enough to establish an element of a

5   crime if the jury believes that the testimony establishes that

6   element beyond a reasonable doubt."

7               Is that acceptable to the government?

8           MR. BLAIS:  Yes, that's fine, your Honor.

9           THE COURT:  Is that acceptable to the defense?

10          MS. HARRIS:  If I could have a moment, your Honor.

11          (Pause)

12          MS. HARRIS:  We're just trying to think briefly, your

13  Honor, because we're not even sure -- the two accomplice

14  witnesses in this case were Gavin Hamels, and he didn't testify

15  about anything about Mr. Hirst whatsoever except, I guess he

16  testified to on overt act.

17          MR. BLAIS:  Your Honor, I guess our response to that

18  would be, Mr. Hamels' testimony alone could establish the

19  existence of a conspiracy even if he does not have direct

20  testimony about Mr. Hirst.  So we do think his testimony alone

21  could establish that.

22          MS. HARRIS:  That's fine, Judge.

23          THE COURT:  After page 11?

24          MS. HARRIS:  13, your Honor.  Page 13.

25          THE COURT:  Yes.  Up to 19.  Up through 19.  Yes.  Go

1   ahead.  13.

2          MS. HARRIS:  Page 13, the phrase "evidence of a prior

3   inconsistent statement is not to be considered by you as

4   affirmative evidence bearing of the defendant's guilt."  We're

5   just not sure here -- I guess if a defendant testifies and

6   there's evidence of a prior inconsistent statement, that would

7   apply here.

8          THE COURT:  Yes.  Well, let me hear from the

9   government, because we also have a lot of emails in this case.

10  Is this instruction appropriate on this record?  It's really

11  not impeachment of a witness with a prior inconsistent

12  statement of a witness.

13         MR. BLAIS:  There certainly was impeachment through

14  prior inconsistent statements.  If anything, I think this is

15  actually a helpful instruction for the defense.

16         THE COURT:  That's what it's intended to be.

17         MS. HARRIS:  On further consideration, your Honor, we

18  withdraw any objection.

19         THE COURT:  All right.  Go ahead.

20         MR. TREMONTE:  Page 18.

21         THE COURT:  All right.

22         MS. HARRIS:  Page 18, I think on line 3.  We thought

23  line 3, the reference to "government" there was not necessary.

24  I'm sorry.  Mr. Tremonte?

25         MR. TREMONTE:  Yes.  It suggests that only the

1    government introduced emails.  I'm just looking for the

2    specific reference.

3            THE COURT:  Any objection to striking "the

4    government", or "government's", rather?

5            From the government?

6            MR. BLAIS:  No, your Honor, because the defense did

7    use emails.

8            THE COURT:  Great.  So it's done.

9            MR. TREMONTE:  Thank you.

10           THE COURT:  Next.  Anything through 19?

11           MS. HARRIS:  No.

12           THE COURT:  Okay, that's done.  First 19 pages are

13    done.  What's next?

14           MS. HARRIS:  In terms of a line issue, our next page

15    is on page 26, your Honor, though I'm just trying to see where

16    the -- obviously we have issues --

17           THE COURT:  Well, that's why we're doing this page by

18    page.  You'll call it out when it comes up.  Page 26 you have

19    an issue?

20           MS. HARRIS:  Yes.  We had asked that the Court admit

21    at the end of the page the phrase "as conclusively as with

22    direct proof, such as evidence of an express agreement."

23           THE COURT:  One second.

24           MR. BIALE:  It's the last --

25           THE COURT:  So you would put a period after the word

1    "existed", and before the word "as", and strike everything

2    after the word "existed", is that the thought?

3             MR. TREMONTE:  Yes, your Honor.

4             THE COURT:  Any objection from the government?

5             MR. BLAIS:  We do object to that, your Honor, because

6    the acts and conducts of other coconspirators can, in fact,

7    warrant an inference of the existence of a conspiracy just as

8    conclusively as with other direct proof, such as direct

9    evidence of an express agreement.  So we think this is a

10   correct statement of the law.

11            THE COURT:  Yes, it is a correct statement of the law.

12   The defense doesn't dispute that.  It's a correct statement of

13   the law, correct?

14            MS. HARRIS:  Your Honor, we are having pagination

15   issues because one of us has a black-lined version and the

16   other doesn't, so that's why I apologize.

17            THE COURT:  All right.  Do we have an extra copy of

18   the clean one?

19            MR. TREMONTE:  Your Honor, we withdraw the objection.

20            THE COURT:  Okay, that's gone.  What's next?  We're

21   kind of back to the future here using paper.  Some of these

22   younger lawyers are not as familiar how this paper stuff works.

23            MR. BIALE:  I'm good with the paper, your Honor.

24            Your Honor, we're up to page 34 --

25            THE COURT:  Hang on now.

1        MR. BIALE:  -- of the clean version.

2        THE COURT:  Okay.

3        MR. BIALE:  On this page, we just think that, as your

4   Honor has put in the third paragraph on "liability for acts and

5   declarations of coconspirators", the charge directly says that,

6   "the reasonable foreseeable acts or statements of any member of

7   the conspiracy are deemed under the law to be acts or

8   statements of all the members," and we would just ask in a few

9   places further down that "requirement of reasonable

10  foreseeability" be included.

11       So on the next page, 35, lines 2 to 3, that the

12  sentence that ends on line 3, we would propose adding, so it

13  would be, "have been a member of the same conspiracy may be

14  considered against the defendant so long as those acts or

15  statements were reasonably foreseeable to the defendant".

16       And then there's one additional place where we would

17  include similar language, which I can tell you where we have

18  it.

19       THE COURT:  You don't have a clean version?

20       MS. HECTOR:  We have the black-lined version.

21       THE COURT:  I'll tell you what.  We'll give you the

22  clean version.  We're going to mark draft number 3 as the next

23  court exhibit.  We'll do that on Monday.  I believe it's going

24  to be Court Exhibit 7.

25       MS. MERMELSTEIN:  Thank you.

1          THE COURT:  This will make it easier.

2          MS. MERMELSTEIN:  Thank you, your Honor.

3          MS. HARRIS:  We had both, so we were confused

4    internally.

5          MR. BIALE:  Your Honor, it appears you and I are the

6    only ones who used the clean version, and your clerk.

7          THE COURT:  To be candid with you, we had a debate

8    about whether to send a black-lined issue, and I believe it's

9    appropriate to let people know what changes came in and not

10   make them hunt for it, so that's why we did it.  But certainly,

11   we're working off the clean version.  You now have it.

12         Now we're on page 35.  So the suggestion is to add at

13   the end of the carryover sentence, the top of 35, that ends on

14   the third line "may be considered against the defendant so

15   long" -- go ahead.

16         MR. BIALE:  "So long as those acts or statements were

17   reasonably foreseeable to the defendant."

18         THE COURT:  Any objection from the government?

19         MR. BLAIS:  Well, Judge, just looking at their letter,

20   I think they want to add this concept in four different places

21   in this --

22         THE COURT:  I'm not adding it in four places.  Is that

23   what the defense wants?  Because then, really, I should on

24   every page add every concept.  "Presumption of innocence"

25   should be on every page, "reasonable doubt" should be on every

1  page.  It's not necessary.  The jury is required to follow the

2  judge's instructions on the law.

3       It is my practice, just to let you know, to give the

4  jurors the typed text of the instructions.  I will tell them if

5  there's any variance between what I say orally and the typed

6  text, it's the oral version that controls.  They'll have that

7  with them in the jury room.  If the plan here is to propose

8  four, it's not happening.

9       MR. BIALE:  Your Honor, I think we'd be fine just

10 having it there in that one place I mentioned, then there's one

11 place later on in the charge.

12      THE COURT:  Where?

13      MR. BIALE:  In the wire fraud instruction where we

14 would want to have that again, because the same concept

15 applies, and I can tell you where that is.

16      THE COURT:  All right.  Without prejudice to the

17 government's ability to object to multiple placements, do you

18 have any objection on the top of 35?

19      MR. BLAIS:  If there's that one single addition in

20 this particular instruction, no, we have no objection.

21      THE COURT:  I'll hear you on whatever else.

22      MR. BLAIS:  Fair enough.

23      THE COURT:  Let's go.  What next?

24      MR. BIALE:  The second instance of that is on page 54.

25 Sorry, one second, your Honor.  So just going page by page,

1    your Honor, there's a reference to "conscious avoidance".

2           THE COURT:  So what are we doing?  Page 54?  Give me a

3    page number.

4           MR. BIALE:  Let's do 54, your Honor.

5           THE COURT:  Where?

6           MR. BIALE:  So on page 54, at line 5, so we would add

7    after "all that is done thereafter, so long as those acts are

8    reasonably foreseeable to the defendant".  Same concept.

9           THE COURT:  Let's give everybody a chance to read

10   through here.  I assume it would be "so long as those acts were

11   reasonably foreseeable to the defendant", correct?

12          MR. BIALE:  Correct.

13          MR. BLAIS:  Your Honor, this section is drafted in a

14   slightly different manner than the previous section.  Here, the

15   instructions are talking about a member of the scheme being

16   legally responsible for something done in the past in

17   furtherance of the conspiracy, as well as for things that are

18   done thereafter, and I don't see how something in the past can

19   be reasonably foreseeable to somebody becoming a member of the

20   conspiracy.  Obviously, foreseeability implies something

21   happening in the future.  So I think it has a potential for

22   jury confusion.

23          THE COURT:  I do tell the jury that, "the same

24   instructions on conspiracy that I gave you on Count One apply

25   to this count."  Do I not?  If I haven't, I should.

 1            MR. BLAIS:  I think you do, although this is actually

 2    in connection with the substantive wire fraud instruction.

 3            THE COURT:  Well, then I don't know that it has any

 4    place in there at all.

 5            MR. BLAIS:  Okay.

 6            MR. BIALE:  I think that makes sense to us, your

 7    Honor.  We'll withdraw it.

 8            THE COURT:  That's fine.  We're back to page 35.  What

 9    do you have after 35?

10            MR. BIALE:  We actually are still in the post page 54

11    world here.

12            THE COURT:  Okay.  So nothing until 54.  At least 54.

13    Is that correct?

14            MR. BIALE:  There is a reference to conscious

15    avoidance earlier.

16            THE COURT:  What page?

17            MR. BIALE:  Let me find it.

18            THE COURT:  Court takes judicial notice that there is

19    no control F for paper.

20            MR. BIALE:  It's at the bottom of page 43, your Honor.

21            THE COURT:  And this may befuddle some lawyers.

22            Page 43?

23            MR. BIALE:  Yes.

24            THE COURT:  Let's see what we have.  So nothing before

25    page 43.  You're done up to this point, correct?

1           MR. BIALE:  Yes, your Honor.

2           THE COURT:  What's the proposed change on 43?

3           MR. BIALE:  On 43, we don't believe that a conscious

4    avoidance charge is appropriate.

5           THE COURT:  All right.  Let me begin by having the

6    proponent of the charge argue why this should be, and then I'll

7    give you a chance to argue why this shouldn't.

8           Go ahead.

9           MR. BLAIS:  Thank you, your Honor.

10          Your Honor, I think the case law is clear that when

11   there is a factual predicate for a conscious avoidance

12   instruction, that a conscious avoidance instruction should be

13   given, and I'll talk in a minute about the factual predicate

14   here, but I did want to, just to frame that discussion, just

15   articulate two principles of law.

16          The first is from United States versus Nektalov, and

17   that's 461 F.3d 309 with a pin site 316 at 2d Cir. 2006.  That

18   case says, "Where the evidence can support both a finding of

19   actual knowledge and a finding of conscious avoidance, the

20   government may present conscious avoidance as an argument in

21   the alternative.  And the second principle of law is from

22   United States versus Hopkins, which is 53 F.3d 533 with a pin

23   site at 542, and that's Second Circuit 1995, and that case

24   says, "Such an instruction is not inappropriate merely because

25   the government has primarily attempted to prove that the

1     defendant had actual knowledge while urging in the alternative

2     that, if the defendant lacked such knowledge, it was only

3     because he had studiously sought to avoid knowing what was

4     claimed."

5          So while it may be true in this case that we are

6     largely relying on the knowledge argument, so long as there is

7     a factual predicate that supports a conscious avoidance

8     instruction, the case law suggests that it is appropriate that

9     such an instruction be given.  I do think there is a factual

10    predicate for a conscious avoidance instruction here.  We set

11    forth some of those argument in the letter brief that we filed,

12    and I can articulate some of them here.

13         THE COURT:  Why don't do you that.

14         MR. BLAIS:  One is the fact that I think it's

15    established in the evidence that the 5,333,333 shares that were

16    issued to Mr. Shahini on May 27th, 2010 were the exact same

17    number of shares that were sent back to the company and

18    canceled by the company in connection with Mr. Manley's

19    termination.  That all happened within a week of each other.

20    There's a May 26th letter from Mr. Hirst to Continental and a

21    June 1st letter from Mr. Hirst to Continental regarding the

22    Manley shares in which he asks that the cancellation of those

23    shares be backdated to May 27th.

24         So we certainly think, given the highly, highly

25    unlikely coincidence that the exercise of the warrant

1    calculation, which was set forth in some complexity, that that

2    would yield the exact same number of shares that were just

3    turned in by Mr. Manley is certainly one fact that should put

4    Mr. Hirst on notice that there may have been something amiss

5    about this particular transaction.

6              I think number two, the fact that on at least two

7    occasions, the chief financial officer of the company was

8    unaware of certain transactions.  In June, when he first

9    learned of the Shahini consulting agreement, which was

10   purportedly entered into in January, and then again in

11   September when he indicates to Mr. Hirst that he's unaware of

12   the existence of the warrant agreement and the issuance of the

13   shares, those two facts, the fact that the CFO on at least two

14   occasions is unaware of significant transactions going on at

15   the company, again, there's an argument that Mr. Hirst should

16   have been on notice, given the CFO's lack of knowledge about

17   significant transactions, that something was amiss with respect

18   to the issuance of the shares.

19             So I think, on multiple grounds, there's a factual

20   predicate for a conscious avoidance instruction.

21             THE COURT:  Let me hear from the defendant.

22             MS. HARRIS:  Your Honor, we realize the Court may not

23   have had a chance to read this, but just to help speed things

24   up.  For today, we had submitted a short letter and filed it on

25   ECF at 2:00 which sets out our objections to the conscious

avoidance charge, but a couple of brief responses to what the
government just proffered.

We don't dispute the law that the government can argue
in the alternative -- obviously they largely presented the case
of direct knowledge -- but here, there still has to be a
factual predicate for that alternative, it can't be just a
hypothetical possibility as a backup plan.

There are two things that I heard Mr. Blais argue was
a factual predicate here.  One, the notion of this sort of --
the coincidence of the 5.33 somehow suggesting that something
was amiss.  First of all, I don't think that the notion of a
generalized sort of something amiss is enough to be a
substitute for the knowledge of the conspiracy alleged in the
indictment.  While it could be something that would be of
concern, I don't think it's the kind of red flag that gives
knowledge of what the government has charged as the conspiracy
here.

Also, it's not even a fact, really, in itself, it's a
coincidence, it's not a fact in the world that is screaming out
to someone like a red -- you know, that this is a point you
could say that Mr. Hirst deliberating ignored.

I forgot, the preliminary issue we wanted to raise
with conscious avoidance, your Honor, is not only -- regardless
of whether there was a fact in the world that they could point
to as a potential red flag or putting someone on notice,

1    there's actually no predicate here for a failure to inquire on

2    the part of Mr. Hirst.  There's no evidence, no evidence in the

3    record of not asking questions.  I mean, it's just the record

4    is blank on that.  There's nothing in the trial about a failure

5    to inquire, to investigate, or a failure to ask questions,

6    which I think is part of the factual predicate that needs to be

7    established, not just the fact --

8                THE COURT:  Well, the government's position is if he

9    asked questions, that he had knowledge.

10               MS. HARRIS:  Exactly.  Actually, here, where everyone

11   else --

12               THE COURT:  But if you avoid asking the questions,

13   then you don't obtain the knowledge.

14               MS. HARRIS:  But your Honor, here, everyone did ask --

15   the government's own witnesses testified that they asked

16   questions and didn't get the knowledge.  So I don't think we

17   can assume that -- there is no factual predicate to assume that

18   if questions were asked, the knowledge would be given.  In

19   fact, the collective understanding of the board of directors,

20   and everyone else, was that a certain fact -- you know, that

21   they were informed by Jason Galanis and accepted certain

22   answers to their questions, so there's no reason to presume

23   that -- if we assume that he hadn't asked, that if he had

24   asked, that he would have been given any answer that was

25   different.

 1            The second issue is that the June/September kind of

 2   time period that Mr. Blais talks about as providing additional

 3   red flags.  Your Honor, that's after -- first of all, even to

 4   the extent those constitute red flags, that's after the central

 5   conduct of when Mr. Hirst allegedly entered this conspiracy.  I

 6   mean, the allegation here is that he entered the conspiracy and

 7   did something wrong and joined up with Jason Galanis and others

 8   when he signed the warrant agreement and when he signed the

 9   letter to Continental to issue the stock.  That somehow those

10   series of transactions were complete and done as of May 27th,

11   that's the moment he joined the conspiracy, and it's his state

12   of mind at that time that the jury is going to have to be

13   considering.  So to then put elements or facts from the record

14   that occurred after that date as somehow then bearing on --

15   that he should have -- it doesn't link up.  It has no bearing

16   on his state of mind as of the date that he allegedly joined

17   the conspiracy.

18            MR. TREMONTE:  May I have one moment, your Honor?

19            (Pause)

20            MR. TREMONTE:  Judge, I'd be interested to hear from

21   the government how it is that the correspondence between these

22   two numbers is evidence that something's amiss on their theory

23   of the case.  I mean, I just don't understand that.  Like why

24   is that in and of itself an indication of anything other than a

25   correspondence between two numbers.  And as I understand their

1    foreseeability theory, it would have been in Mr. Hirst's

2    interest for there to have as many shares as possible in the

3    quote/unquote public float.  Why is the cancellation of the

4    exact same numbers consistent with a theory of amiss?  It

5    doesn't make any sense.

6          THE COURT:  Let me ask you.  Is the defendant

7    otherwise finished with their argument?

8          MR. TREMONTE:  We're checking, your Honor.

9          THE COURT:  All right, good.

10         (Pause)

11         MS. HARRIS:  Your Honor, I mean, look.  There are

12    other factors in the record that concern the Court or the

13    government and we'll be happy to respond to those.

14         MR. TREMONTE:  Yes, your Honor.  We're all set.

15         THE COURT:  I've considered the issue, and I've

16    considered the arguments of both sides.  I presided at this

17    trial, and I heard the evidence, and the evidence of

18    defendant's knowledge is a case built largely, though not

19    entirely, on circumstantial evidence.  I look at this in a much

20    more holistic manner, having sat here through the trial, and

21    much of the evidence that would support a finding of actual

22    knowledge suggests that the defendant had knowledge of facts,

23    the same facts which would have given him an awareness of a

24    high probability that a fact was so.

25         It seems to me that conscious avoidance is quite

1   appropriate in this case as an alternate theory, and it's quite

2   appropriate for the government to argue that there was actual

3   knowledge.  But alternatively, these facts, if they don't

4   amount to actual knowledge, amount to conscious avoidance, and

5   therefore, I am giving a conscious avoidance charge.

6          MR. BIALE:  I think there's one other issue, your

7   Honor, on page 60.

8          MR. BLAIS:  Your Honor, just to finish the thought on

9   conscious avoidance.  I think that occurs in two places.

10  Page 43, which we just flagged, and then separately there's a

11  conscious avoidance instruction, which I think we need to

12  eliminate the terms which is currently there, if applicable,

13  which is on page 62.  The top of page 62.

14         THE COURT:  Thank you.

15         Go ahead.

16         MR. BIALE:  Your Honor, on page 60, just before

17  "willfully causing a crime".

18         THE COURT:  Yes.

19         MR. BIALE:  In that short paragraph, at the end of the

20  aiding and abetting charge, we would propose replacing "if he

21  did" with "if the government has proved beyond a reasonable

22  doubt that he did", and then replacing in the next sentence "if

23  he did not" with "if the government has not proved beyond a

24  reasonable doubt that he did".

25         THE COURT:  Any objection from the government?

 1          MR. BLAIS:  No, your Honor.

 2          THE COURT:  I just want to make sure on the second

 3  sentence I don't have a double negative.  So let me read the

 4  way I propose to give it on the second sentence.  This is the

 5  last sentence above "willfully causing a crime".  "If the

 6  government does not prove beyond a reasonable doubt that he

 7  did, then the defendant is not an aider and abettor and is not

 8  guilty as an aider and abettor of that offense".

 9          MR. BIALE:  Sounds right.  Yes, your Honor.

10          THE COURT:  Okay.

11          MR. BLAIS:  No objection from the government.

12          MR. BIALE:  Those are all the changes we have, and we

13  have two instructions that we propose adding.

14          THE COURT:  Which are?

15          MR. BIALE:  Which are an instruction on multiple

16  conspiracies, and then the instruction on Regulation S.

17          THE COURT:  All right.  Let me let the government

18  first catch up on any changes.  I guess take it from page 20

19  on.

20          MR. BLAIS:  We have no changes.  We have reactions to

21  the two additional instructions that are proposed.

22          THE COURT:  I understand.

23          MR. BLAIS:  We have no additional proposals.

24          THE COURT:  Take a look at the defendant's proposed

25  multiple conspiracy charge on page 2 of the letter today, and

1   put a bracket around the first sentence, and put a bracket

2   around the last sentence such that it would read, "Proof of

3   several separate conspiracies is not proof of a single overall

4   conspiracy.  As I have instructed you, you must determine

5   whether the conspiracy charged in the indictment actually

6   existed.  If you find that the government has not proven beyond

7   a reasonable doubt that the conspiracy charged in the

8   indictment existed, you must acquit Mr. Hirst of that

9   conspiracy."

10          I'll hear from both sides why that isn't a proper

11  charge just as I've read it.  Any objection from the

12  government?

13          MR. BLAIS:  May we have a minute, your Honor?

14          THE COURT:  Sure.

15          (Pause)

16          MR. BLAIS:  Judge, as a general matter, I think, to

17  the extent that the defense is going to argue the existence of

18  multiple conspiracies, I do think they are entitled to a

19  multiple conspiracy instruction.  I think our preference would

20  be to just use the instruction that's in Sands for multiple

21  conspiracy, which is I think instruction 19-5.

22          THE COURT:  What does it say?

23          MR. BLAIS:  I don't have it at my fingertips.  I think

24  it, in essence, is very similar to the instruction that you've

25  read.

 1          THE COURT:  Okay.  So everybody put your thinking cap

 2   on.  There could be a problem with what I just proposed, but

 3   tell me what it is, because I think that's a correct statement

 4   of the law.

 5          MR. BLAIS:  Agreed, your Honor.  I don't think the

 6   portion that you've -- excluding the first and last sentence, I

 7   think the portions that you read are a correct statement of the

 8   law.

 9          THE COURT:  So you have no objection to that.

10          MR. BLAIS:  We would have no objection.

11          THE COURT:  Okay.  Let me hear from the defendant.

12          MR. BIALE:  Your Honor, I think we're fine with that,

13   too.  I think that the last sentence is from Sand, we're just

14   checking right now.

15          THE COURT:  It may be, but Judge Sand -- and I love

16   him -- is not presiding in this case.  And if it came from Sand

17   and Siffert, I would respectfully say that I don't think it's

18   as clear as it can or should be.  So with all deference to

19   Judge Sand and John Siffert -- who I also like very much -- I

20   would not be inclined to give that.

21          So where do you propose for me to put this?  That's a

22   tossup question.

23          MR. BIALE:  Your Honor, I think we propose to put it

24   at the end of the charge on the existence of the conspiracy

25   which starts on page 25 and ends on page 27.

1            MR. BLAIS:  I guess our proposal would be, rather than

2    putting it at the very end, put it as the second to last

3    paragraph, because I think the last paragraph as it exists is

4    basically a summary of the charge that precedes, so it seems

5    better to end with that.

6            THE COURT:  Where are you?

7            MS. MERMELSTEIN:  27, your Honor.

8            THE COURT:  27.

9            MS. MERMELSTEIN:  Yes.

10           THE COURT:  So above the paragraph beginning "so you

11   must first".

12           MR. BLAIS:  That would be our proposal.

13           THE COURT:  Any objection?

14           MR. BIALE:  No objection, your Honor.

15           THE COURT:  Let me hear you on whether I should charge

16   anything on Regulation S and what I should charge.  Go ahead.

17           MR. TREMONTE:  Your Honor, we didn't hear back from

18   the government on this.  We sent it sort of the middle of

19   today, so we didn't get a chance to discuss it.

20           Based on my previous conversations with the

21   government, my understanding is that we're in general agreement

22   that a charge is appropriate.  I had a conversation with

23   Mr. Blais following a sidebar, and this really is an attempt to

24   sort of capture the basics, plus it tracks the testimony that

25   Mr. Laby gave, except, candidly, your Honor, I believe at the

1   end of the final sentence, "shares issued or sold pursuant to

2   Regulation S may be held in U.S.-based brokerage account", that

3   is Professor Laby, and may serve as collateral for a margin

4   load in a U.S.-based brokerage account," I don't think that's

5   controversial, but that's not from Professor Laby.

6         MR. BLAIS:  Judge, I think the instruction as written

7   is not an incorrect statement of the law.  I think this is what

8   Regulation S says and provides, however, we think it's

9   potentially confusing to give this instruction to the jury.

10  There is testimony in the record about Regulation S and how it

11  operates, and I think including this as a legal instruction may

12  carry some suggestion that the jury has to determine whether

13  Regulation S was or was not complied with in connection with

14  this case, and that's not something that they necessarily need

15  to find.

16        Now, of course, whether regulation was or was not

17  complied with may be evidence of intent in this case or

18  relevant in some other way, but I think just including a

19  standalone instruction on Regulation S may cause jury confusion

20  so I think our thought is we should leave it out.

21        THE COURT:  I understand what you're saying, and I

22  have some ideas on what I might do.

23        MR. TREMONTE:  Your Honor, if I could?

24        THE COURT:  Go ahead, Mr. Tremonte.

25        MR. TREMONTE:  If I could make a record on that, your

1    Honor.  The big problem here, of course, is that there was

2    conflicting testimony from people who should have known better,

3    and we tried to clean that up to some extent on cross, but

4    unfortunately, at least one of the government's witnesses, if

5    not sort of one and a half, persisted in articulating not a

6    misunderstanding of Regulation S, but an understanding that is

7    basically flatly contradictory to what the law states.  I think

8    that gives rise to a very serious problem in terms of jury

9    confusion.

10           It also goes to both intent, as Mr. Blais

11   appropriately noted, but also foreseeability.  The jury has to

12   understand, and I think it's fair for us to argue, your Honor,

13   that it's not foreseeable in this context that down the line of

14   an extended chain of causation, you've got actors --

15   potentially bad actors, potentially not -- who are acting

16   contrary to the law, which by the way is appropriately and

17   accurately memorialized in the very letter that Mr. Hirst sent

18   and in the letter that he received from Mr. Feiner.  So I think

19   on the jury confusion point, on intent and on foreseeability

20   it's important that the jury get an instruction.

21           THE COURT:  One moment, please.

22           (Pause)

23           THE COURT:  I'm going to propose that on page 64,

24   after the conscious avoidance charge, that I would have a

25   charge on Regulation S.  And the lead-in would be, "During the

1    course of this trial, evidence was offered about a regulation

2    of the Securities and Exchange Commission known as Regulation

3    S.  I will now instruct you on the meaning of this regulation."

4    Then following the text on page 1 of the letter of September

5    23, 2016 of Sher Tremonte.  And then following that text, "this

6    instruction was given because it may help in your understanding

7    of the evidence," and leave it at that.

8              MR. TREMONTE:  That's good with the defense, your

9    Honor.

10             MR. BLAIS:  Judge, we believe there needs to be some

11   concept in there that this is not an element that they are

12   required to find one way or the other.

13             THE COURT:  That's why I said it the way I said it.

14   That's why I said it that way.  That it's given so you can

15   understand the evidence.  It's being separated from the

16   charges, it's coming after the conscious avoidance and before

17   venue.

18             MR. BLAIS:  Right.  But conscious avoidance is a way

19   of finding an element.  Venue is also something that must be

20   found by the jury.

21             THE COURT:  I'm openminded on this.  I can put it on

22   66 before concluding judges.

23             MS. MERMELSTEIN:  I think, your Honor, what we're

24   suggesting is just one additional line that says something

25   like, "To be clear, whether or not Regulation S was violated is

 1   not an element of any crime charged here, it's being provided

 2   to assist you in considering the evidence in this case."

 3            MR. TREMONTE:  To the point made earlier, Judge, by

 4   that reasoning, that qualifying language would make its way

 5   into any number of paragraphs.  I think the proposed placement

 6   by the Court makes it clear.

 7            THE COURT:  Yes.  I'm going with what I proposed as

 8   the intro and outro, but I'm going to do it on page 66.

 9            MR. TREMONTE:  Yes, your Honor.

10            THE COURT:  Anything else from the defendants?

11            MR. BIALE:  Nothing further, your Honor.

12            THE COURT:  Anything else from the government?

13            MR. BLAIS:  No, your Honor.

14            THE COURT:  All right.

15            MR. BIALE:  We do have one housekeeping matter that's

16   not related to the jury charges.

17            THE COURT:  Go ahead.

18            MR. BIALE:  Your Honor, there were two stipulations

19   that were read into evidence yesterday by the defense where we

20   took out certain defendant's exhibits that either, through

21   agreement with the government or based on your Honor's rulings,

22   did not end up coming into evidence.  We have revised those

23   stipulations, however, the stipulations have already been

24   offered and admitted as defendant's exhibits.  So the problem

25   that we're having now is we need to sign a new version with the

1   government that has the revised defendant's exhibits, but it

2   will have a different date if we execute it today.  So I guess

3   what we were actually proposing to do is backdate it to --

4           THE COURT:  I'm going to make a suggestion.  Don't put

5   a date on it.  Do you have it done already?

6           MR. BIALE:  We have it done but not signed.

7           THE COURT:  Okay.

8           MR. BIALE:  Not dated.

9           THE COURT:  Is it dated or --

10          MR. BIALE:  It is not.

11          THE COURT:  What you can do, if Mr. Blais has no

12  objection, just put on the exhibit -- put after the exhibit

13  number "R".  The letter "R".  Okay?  I would suggest you put S

14  slashes on the signatures lines and not complete the date.

15          Is that acceptable to the government?

16          MR. BLAIS:  That's fine with us, your Honor.

17          THE COURT:  Is that acceptable to the defendant?

18          MR. BIALE:  Yes, your Honor.  Thank you.

19          THE COURT:  The thing you need to do is call this to

20  my attention when my deputy is here so we can make sure that

21  the prior version is stricken from the record.  All right?

22          MR. BIALE:  Okay.

23          THE COURT:  And that's exhibit number?

24          MR. BIALE:  It's Defendant's Exhibits 1300 and 1302.

25          THE COURT:  Okay.  Go ahead.

1    MS. MERMELSTEIN:  We have a slightly similar issue.

2    THE COURT:  No.  Before that, so 1300 and 1302 are

3    stricken from the record and 1300R and 1302R are admitted in

4    their place instead.

5    (Defendant's Exhibits 1300R and 1302R received in

6    evidence)

7    THE COURT:  I'll tell you right now, you may as well

8    know, and you may as well get your team working on it, that

9    when you're dog tired after closing arguments and suffering

10   through the jury instructions, I'm going to make you both work

11   together on assembling the trial exhibits that go into the jury

12   room.  So have your own exhibits done ahead of time, you're

13   going to look at each other's stacks, make sure it's accurate

14   and complete, and then they're going to go into the jury room.

15   And I prefer not to have any delay on that.

16   MR. BLAIS:  We've done that already, your Honor.

17   THE COURT:  All right.

18   MS. MERMELSTEIN:  In fact, your Honor, it is in doing

19   that that we discovered that we essentially have the same

20   problem with one of our stipulations, which is 1514.  It has a

21   typographical error, so it suggests that Government's

22   Exhibit 1033 is stipulated to and then was offered as part of

23   the stipulation.  That's one of the documents that, in fact,

24   the parties agreed not to offer, and so we'd like to strike

25   Government's Exhibit 1033 from the record and then substitute

1   in the same method that the defense will do, 1514R for the

2   current 1514.

3            THE COURT:  Any objection?

4            MR. BIALE:  No objection, your Honor.

5            THE COURT:  Excellent.

6            (Government's Exhibit 1514R received in evidence)

7            MR. BLAIS:  I know we had some discussion at the end

8   of the trial day, I believe on Wednesday, regarding the timing

9   or length of the jury addresses.  I think that's a topic we'd

10  like to revisit.

11           We've kind of thought about the length of time that

12  may be necessary.  We do think that this is a case -- although

13  it's been a relatively short trial, it is a trial with some

14  degree of complexity and certainly a lot of documents, and we

15  actually think that fulsome jury addresses may actually help

16  along the jury deliberations in this case and help the jury

17  understand the evidence.

18           I think from our perspective, I know I said 90 minutes

19  for my estimate of the closing.  I think, to be safe, I would

20  say two hours for --

21           THE COURT:  I think you guys -- and I've seen this --

22  guys and gals -- I've seen this in trials.  There's a

23  fundamental misunderstanding of juror comprehension.  And if

24  you think that a jury is going to follow your summation for two

25  and a half hours, or two hours, or the defense's summation for

1   that length, it's a dubious proposition, and I would urge you

2   to check with those who make a profession of this, jury

3   research consultants, many of whom have Ph.D.s in the sciences,

4   in psychology.  You will have lost your audience.  I could give

5   you four hours if you want, but you're going to lose them.  You

6   will have lost them when you get up to that level.

7              MR. BLAIS:  Judge, we, of course, are going to make

8   every effort to streamline and be as comprehensive but as short

9   as necessary to fully explain the evidence, we just want to

10  ensure that we are able to fully explain the case, which, as we

11  said, has some degree of complexity.  There are a lot of moving

12  parts to this particular scheme, and tying all of the various

13  pieces of evidence that came in during the course of this

14  trial, and there are many, tying them altogether I think takes

15  some time to fully present to the jury.

16             THE COURT:  What were you asking for in terms of a

17  rebuttal summation?

18             MR. BLAIS:  I think we intended to ask for two hours

19  for the principal closing and 45 minutes for rebuttal.

20             THE COURT:  So you want to elongate this for 45

21  minutes.

22             Mr. Tremonte what would you like?

23             MR. TREMONTE:  I would like for there not to be a

24  45-minute rebuttal.

25             THE COURT:  What else would you like?

1    MR. TREMONTE:  Your Honor, when asked the other day, I

2    said 90 minutes.  I have been working on this and thinking

3    about it.  I tend to agree -- I'm sorry, I said two hours, your

4    Honor.  I tend to agree with the Court.  I think to go one

5    minute more than is absolutely necessary is a mistake.  That

6    said, my original request stands, but I fully intend to be

7    better than two hours.  I'd like to do better than 90 minutes

8    because I tend to agree with the Court that we run a really

9    high risk of losing the jury, which in this case we absolutely

10   don't want to do.

11   THE COURT:  Plus which, I should say for the record

12   that the jury instructions will run for close to three hours.

13   MR. TREMONTE:  Understood, your Honor.

14   THE COURT:  So that's asking the jury to comprehend

15   745 minutes of dense material.  It means the jury won't get

16   this case.  We're not sitting next Friday, we're bumping into

17   the Jewish holidays, and I think it's a mistake.

18   For one thing, the record will show that, yes, this is

19   a case that warrants -- it was an eight-day trial.  It warrants

20   more than a 45-minute overview of the evidence from each side.

21   I fully get that.  But let me see what I can come up with.

22   So the government will have 90 minutes on its opening

23   assumption, the defense will have 110 minutes on its, and the

24   government will have 30 minutes on its rebuttal.

25   MR. BLAIS:  Understood, your Honor.

1    THE COURT:  Anything else?

2    MR. BLAIS:  Nothing from the government.

3    THE COURT:  Anything else from the defendant?

4    MR. TREMONTE:  No.  Thank you, your Honor.

5    MS. HARRIS:  Sorry.  Administratively, I note we did

6    provide your Honor with a copy of the binder.  I see it right

7    there.  Thank you very much.

8    Then also, I just note that we will remind your deputy

9    on Monday, because she asked me to, but as you may recall, we

10   marked and offered one of the emails in the binder in the

11   middle of the read.  The jury's copies of the binders are not

12   marked, so we prepared 18 copies of the replacement page, which

13   we can just hand to the jury, to the extent they need a marked

14   exhibit.

15   THE COURT:  Should I be doing anything?

16   MS. HARRIS:  No, that's fine, Judge.

17   THE COURT:  Thank you very much.

18   It almost could sound sarcastic saying have a pleasant

19   weekend, but you have families and lives as well, I expect

20   you're going to be working hard, but I hope you also get some

21   rest and some personal time.  I know it's stressful, and I may

22   say this again, but it's rare that I can say that it's a

23   pleasure to have such fine lawyers on both sides before me on a

24   case.  I'm able to say that here, and I'm able to say that with

25   honesty and sincerity.

1    I apologize if I'm repeating something I've said, but

2    I have all different types of lawyers appearing in this court,

3    and when you have good lawyers, there may be more issues that

4    arise, but they are presented honestly and efficiently, and

5    every judge I ever talk to agrees with the proposition they'll

6    take tough, aggressive, good lawyers any day of the week over

7    folks who really don't know what they're doing at times and

8    create a lot of unnecessary work and worry for the Court.

9        So it's really been a delight to have all six of the

10   presenting lawyers and their staffs.  Thank you.

11       (Adjourned to September 26th, 2016, at 10:00 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25